ABEL F. ATHERTON *vs.* GEORGE F. ATKINS & another.

Middlesex. Jan. 19. — Feb. 27, 1885. FIELD, DEVENS, & COLBURN, JJ., absent.

If the competency of evidence depends upon the existence of special circumstances to entitle the party objecting to its exclusion to a new trial, it must appear in his bill of exceptions that such special circumstances existed, and that the evidence was offered for that purpose.

CONTRACT. Trial in the Superior Court, before *Rockwell*, J., who allowed a bill of exceptions, in substance as follows :

The plaintiff offered testimony tending to show that, on November 10, 1882, he delivered to the defendants two horses worth $300, and his note for $500, and that they, in consideration thereof, agreed to deliver to him a pair of horses, sound, kind, well mated, worth $800, and in every way satisfactory to him; and that this pair were not sound, kind, and well mated, were not worth $800, and were not satisfactory to him.

It was not in dispute that, before the note was given, the defendants showed the plaintiff a pair of horses, that he rode behind them, that the defendants told him the price of this pair was $800, and that, at the time the note was given and the plaintiff's horses delivered to the defendants, they delivered to him the pair which they so showed him, and executed to him a bill of sale of this pair, written by himself, as for $800, with a credit " by two horses " of $300, leaving a balance of $500, and ending, " Received payment, by note on four months."

The defendants denied the claim, and introduced evidence tending to show that they and the plaintiff swapped horses, he paying $500, by his note for that sum, to boot, and that, in consideration of his horses and said note, they sold and delivered to him the pair referred to, and that was the entire transaction between the parties. No fraud or deceit was alleged or claimed.

The plaintiff testified that repeatedly after the receipt of the pair he met the defendants and told them that the horses were not as represented, and he was not satisfied with the same, and wanted them to furnish such a pair as they had agreed to give him. The defendant Atkins denied this, and testified that until April 24, 1883, when he received a letter from the plaintiff, he

never heard that the plaintiff contended that the defendants were bound to obtain for him a different pair of horses from those delivered to him on November 10, but that the plaintiff wanted to exchange the pair so obtained for a heavier, larger, and more expensive pair.

The plaintiff testified, on cross-examination, that he had in his employ one Flynn, who was his coachman and had charge of his horses, and that some time after November 10, and before the letter of April 24, he sent Flynn to the defendants on an errand about these horses; but he denied having authorized Flynn to say that he, the plaintiff, wanted a larger and better pair, and was willing to pay $1500 therefor. The defendants' counsel asked the defendant Atkins what Flynn said to him in reference to these horses at the time when he came to his stable, stating that they proposed to show that Flynn said that the plaintiff liked the pair he had, but that he wanted a larger and heavier pair, and wanted to run the best pair of horses in Lowell, and was willing to pay as high as $1500 for the same, and that the plaintiff wanted Atkins to see if he could get him such a pair. The plaintiff objected to the question; and the judge excluded it.

It appeared in evidence, that, after that interview, the defendants showed the plaintiff two different pairs of horses, which he did not like.

In June, 1883, the plaintiff returned the horses to the defendants' stable, and Atkins told him that, if he left them, he would do so at his own risk and expense. The plaintiff took the halters off the horses, and they subsequently ran at large in the streets and into a neighboring stable; whereupon the defendants, after consulting counsel, took the pair into their own stable, and kept them until they were sold on execution.

The jury returned a verdict for the plaintiff for $700; and the defendants alleged exceptions.

*J. Davis & G. F. Richardson*, for the defendants.

*F. T. Greenhalge & G. H. Stevens*, for the plaintiff.

C. ALLEN, J. The testimony as to what Flynn said was of itself immaterial and incompetent. But the argument for its admission is now put on the ground that it would account for the defendants' subsequent conduct in showing horses to the

plaintiff. The difficulty in our entertaining this view is, that it does not appear by the bill of exceptions that the evidence was offered for that purpose at the trial, or that the defendants' subsequent conduct had already been shown as a fact in the case, at the time when the evidence of what Flynn said was excluded. Where evidence has been excluded which was incompetent of itself, but the party who offered it relies, at the argument in this court on the bill of exceptions, on some special ground or circumstances to make it competent, — as, for example, to explain some equivocal act of the party which has been shown by his adversary and is relied on in the case, — the bill of exceptions should show clearly that such special ground or circumstances existed, and that the evidence was offered for the special purpose. *Collins* v. *Stephenson*, 8 Gray, 438, 441. *Jones* v. *Smith*, 121 Mass. 15. *Exceptions overruled.*